**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTWAN MITCHELL | : | CIVIL ACTION |
| | : | |
| **v.** | : | NO. 25-6521 |
| | : | |
| MAJOR MOORE, WARDEN STEVEN | : | |
| ANGELUCCI | | |

## MEMORANDUM

**KEARNEY, J.**                                                              **April 16, 2026**

An incarcerated person believes an unidentified "Major" or "Captain" in his correctional facility violated his due process and Eighth Amendment rights when she found him guilty of a disciplinary infraction and imposed a fine. The incarcerated person asserts he had nothing to do with the infraction. He sued both the unidentified Major/Captain and the Facility's Warden for denying his grievance and approving the Major's discipline decision. We dismissed the Major without prejudice to allow the incarcerated person to find the name of the Major and pursue his claim against the identified state actor. The Warden now moves to dismiss arguing denying the grievance and approving the unidentified Major's disciplinary finding is not sufficient personal involvement for the civil rights claims. We agree with the Warden. The incarcerated person has not—after two attempts—pleaded facts allowing us to plausibly infer the Warden personally directed the Major to find him guilty without evidence or had actual knowledge of the violations at the time and acquiesced in them.

## I.    Alleged pro se facts and public record

The Commonwealth detained Antwan Mitchell at the Curran-Fromhold Correctional Facility in September 2024.[1] Six incarcerated persons became involved in an altercation at the Facility on September 10, 2024.[2] Several incarcerated persons assaulted another individual.[3] Mr.

Mitchell tried to save this individual by pulling two persons off him.[4] Mr. Mitchell remembers nothing else about the event.[5] The Facility does not identify Mr. Mitchell as one of the six persons involved in the altercation.[6]

The Facility later disciplined Mr. Mitchell for his involvement in the altercation and for "causing harm to two individuals."[7] The Facility "convicted" him and "fined [him] $400 for transportation fees."[8] The Facility did not provide a hearing or an opportunity for him to present evidence or review the evidence against him before imposing the fine.[9]

Mr. Mitchell sued Warden Steven Angelucci and a "Major" or "Captain" Moore under section 1983 in their individual capacities for depriving him of due process under the Fourteenth Amendment by finding him "guilty" and fining him $400 without a hearing.[10] He also alleged the fine violated the Eighth Amendment.[11] But he did not allege sufficient information to identify and serve Major Moore.[12]

Warden Angelucci moved to dismiss the Complaint.[13] We dismissed the Complaint without prejudice finding Mr. Mitchell did not plead Warden Angelucci's personal involvement in the alleged constitutional violations.[14] We gave Mr. Mitchell until February 25, 2026 to amend to (1) plead Warden Angelucci's personal involvement, (2) identify Major Moore by full name, (3) return a USM-285 form for Major Moore, and (4) plead Major Moore's personal involvement.[15]

Mr. Mitchell timely moved for leave to amend his Complaint with a statement of facts and filed a separate affidavit.[16] We interpret the incarcerated Mr. Mitchell's pro se statement of facts and accompanying affidavit as his amended Complaint.[17] Mr. Mitchell still did not sufficiently identify Major Moore and we dismissed his claim against Major Moore without prejudice on February 27, 2026.[18]

2

II.    Analysis

Mr. Mitchell alleges Warden Angelucci can be liable for his constitutional claims arising from his denying Mr. Mitchell's grievance and upholding Major Moore's decision despite a lack of evidence warranting discipline.[19]

Warden Angelucci moves to dismiss Mr. Mitchell's amended allegations against him.[20] He argues denying a grievance is insufficient to establish personal involvement under the civil rights law where the grievance did not alert an official to an ongoing constitutional harm and where the official's response itself is not a constitutional violation.[21] We agree with Warden Angelucci.

A person suing a state actor in his individual capacity under section 1983 must show the state actor had "personal involvement in the alleged wrongs."[22] The person can show a state actor's personal involvement by alleging the state actor "personal[ly] direct[ed]" the wrong or had "actual knowledge" of the wrong and "acquiesce[d]" in it.[23] Mr. Mitchell claims Major Moore violated his rights when she "found [him] guilty" of assaulting other inmates without supporting evidence.[24] Mr. Mitchell asserts Warden Angelucci is personally responsible for the alleged violations because he denied Mr. Mitchell's grievance challenging Major Moore's decision finding him guilty.[25]

But where "an official's only involvement" in an alleged constitutional violation "is the investigation or adjudication of an inmate grievance after the event giving rise to the grievance has happened, that is not . . . personal involvement."[26] Mr. Mitchell does not allege facts after two attempts allowing us to plausibly infer Warden Angelucci personally directed Major Moore to find him guilty without evidence or had actual knowledge of the violations at the time and acquiesced in them. Some of our colleagues recognize a grievance response can show personal involvement where it notifies an official of an ongoing violation or where the official's response to the grievance is a separate violation.[27] But Mr. Mitchell does not allege facts allowing us to plausibly infer he

3

reported an ongoing violation or Warden Angelucci's response itself violated his constitutional rights.

We grant Warden Angelucci's Motion requiring we dismiss Mr. Mitchell's claims with prejudice as Mr. Mitchell has now twice not pleaded facts allowing us to plausibly infer Warden Angelucci's personal involvement in an alleged constitutional violation.[28]

### III.    Conclusion

Mr. Mitchell has now twice not pleaded facts allowing us to plausibly infer Warden Angelucci's personal role in a constitutional violation based on Major Moore's decision to find Mr. Mitchell guilty of disciplinary charges in his Facility. We grant Warden Angelucci's Motion requiring we dismiss Mr. Mitchell's amended Complaint with prejudice as to Warden Angelucci.

We now proceed to identify the full name of Major Moore rather than further delay with subpoenas so the matter against Major Moore can move forward and we can then address the claims against Major Moore on the merits.[29]

---

[1] *See* ECF 19 at 1. We earlier found Mr. Mitchell did not explain why Warden Angelucci—as the warden at Curran-Fromhold Correctional Facility—would be responsible for alleged wrongs Mr. Mitchell suffered while detained at Riverside Correctional Facility. *See* ECF 16 at 5. Mr. Mitchell later clarified he resided at Curran-Fromhold Correctional Facility in September 2024. *See* ECF 19 at 1.

[2] *See* ECF 2 at 3 ¶¶ 7–8.

[3] *See id.* at 3 ¶ 8.

[4] *See id.*

[5] *See id.*

[6] *See id.* at 3–4 ¶ 8; *id.* at 8.

[7] *See id.* at 3 ¶ 7, 4 ¶ 9.

[8] *See id.*

[9] *See id.* at 6 ¶ 11.

[10] *See id.* at 1–4 ¶¶ 1–9, 6 ¶ 11. "Major" or "Captain" Moore is an unidentified disciplinary hearing officer at the Philadelphia Department of Prisons. *See id.* at 3 ¶ 4. We refer to Major or Captain Moore as "Major Moore."

Mr. Mitchell later swore to the best identification he could offer as to the identity of Major Moore in his Facility, reminding us the Facility will not share the first name of the officer for security reasons. ECF 19. We order the Defendants' counsel either accept service for Major Moore or provide the full name of Major Moore for service purposes.

[11] *See id.* at 6 ¶ 11.

[12] *See* ECF 13; ECF 14.

[13] *See* ECF 15.

[14] *See* ECF 16.

[15] *See id.* at 1.

[16] *See* ECF 17; ECF 19.

[17] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed[.]'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))).

[18] *See* ECF 18.

[19] *See* ECF 17 at 3; ECF 19 at 2.

[20] *See* ECF 20.

[21] *See id.* at 7–9.

[22] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.").

[23] *See id.*; *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 222 (3d Cir. 2015) ("A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct.").

[24] *See* ECF 17 at 2.

[25] *See id.* at 2–3; ECF 19 at 2.

[26] *See Sims v. Wexford Health Sources*, 635 F. App'x 16, 19–20 (3d Cir. 2015); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (agreeing person did not show personal involvement where "the only involvement alleged in the Complaint is [the officials'] review and denial of [the person's] grievance"); *Hunter v. Pa. Dep't of Corrs.*, No. 24-1870, 2024 WL 4729880, at *7 (M.D. Pa. Nov. 8, 2024) (finding no facts showing an official's personal involvement in an alleged due process violation where the person only alleged the official upheld a misconduct finding while resolving a grievance appeal).

[27] *See Blount v. Talasky*, No. 26-126, 2026 WL 614880, at *12 (M.D. Pa. Mar. 4, 2026) (explaining our Court of Appeals has noted a "response to a grievance may be sufficient to show [an] official's personal involvement" where (1) the official's "response to the grievance[] constitute[ed] an alleged constitutional violation" or (2) the official "learned about the alleged constitutional violations through a grievance and acquiesced in the violations by failing to address an ongoing constitutional violation" (citing *Sutton v. Rasheed*, 323 F.3d 236, 249–50 (3d Cir. 2003); *Johnson v. Wireman*, 809 F. App'x 97, 100 (3d Cir. 2020); *Diaz v. Palakovich*, 448 F. App'x 211, 215 (3d Cir. 2011))).

[28] We must give a person leave to amend his complaint "unless amendment would be inequitable or futile." *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)). Where a person has "repeated failures to cure the deficiency by amendments previously allowed" we may deny leave to amend. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (citing *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the V.I., Inc.*, 663 F.2d 419, 425 (3d Cir. 1981), *cert denied*, 455 U.S. 1018 (1982)); *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them.").

[29] *See, e.g.*, *Cordero v. Doe*, No. 21-3882, 2022 WL 605721, at *2 (D.N.J. Mar. 1, 2022) (noting an incarcerated person "sufficiently stated a First Amendment claim against the sole Defendant John Doe for opening and reading his legal mail outside of his presence" but dismissing his claim on other grounds). Judge Sheridan granted the incarcerated person ninety days "to submit an amended complaint that names the unidentified" John Doe or to "submit to the Court a request for a subpoena under Federal Rule of Civil Procedure 45(c)(2) describing a prison official whom he believes has the ability to produce documents that would identify John Doe . . . ." *See id.* at *3. Mr. Mitchell has sworn to his best description of Major Moore recognizing the Facility will not give him Major Moore's first name for security reasons. We direct Defendants' counsel to file a Notice identifying Major Moore's full name and present location to allow U.S. Marshal service or be willing to accept service subject to review on the merits.